USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 10/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ESPINOSA,
A 076 578 538,

Petitioner,

-against-

Todd Blanche, in his official capacity as U.S. Attorney General;
Marcos Charles, in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;
David Venturella, in his official capacity as Acting Director, Immigration and Customs Enforcement;
Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security;
Kenneth Genalo, in his official capacity as the Field Office Director for ICE ERO's New York City Field Office,

Respondents.

26 Civ. 5802 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Luis Espinosa, a native and citizen of Venezuela, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1. Espinosa is subject to a final order of removal but has been granted country-specific withholding of removal to Venezuela and was released on an order of supervision ("OSUP") in 2021. *See* Pet. ¶ 16; Opp. at 8–9, ECF No. 9; Genao Decl. ¶¶ 23–24, ECF No. 10. Espinosa contends that his detention violates his Fifth Amendment right to due process, regulations governing OSUP revocation, and the Administrative Procedure Act, and he seeks immediate release from custody. *See* Pet. at 12. For the reasons stated below, the Petition is GRANTED.

## BACKGROUND

Espinosa is a 55-year-old native and citizen of Venezuela. Pet. ¶ 8. He first entered the United States at an unknown place and time, and in 1998, was removed to Venezuela. *See* Genao Decl. ¶¶ 5, 10. In April 1999, Espinosa reentered the United States near El Paso, Texas. *Id.* ¶ 11. In July 2011, he was charged in New York with operating a motor vehicle while intoxicated. *Id.* ¶ 16. In March 2012, Espinosa was charged with assault in the third degree and harassment in the second degree. *Id.* ¶ 17. The disposition of both charges is unknown. *Id.* ¶¶ 16–17. In July 2012, while detained at Rikers Island, ICE reinstated his 1998 removal order and removed him from the United States. *See id.* ¶ 18. Espinosa reentered the United States at an unknown place and time. *Id.* ¶ 19. In May 2021, in Virginia, Espinosa was arrested for grand larceny (less than $1,000); ICE again detained him and sought to reinstate his removal order. *Id.* ¶¶ 20–21. In September 2021, an immigration judge granted Espinosa withholding of removal to Venezuela under 8 U.S.C. § 1231(b)(3), and, one month later, ICE served Espinosa with an OSUP and released him from custody. *Id.* ¶¶ 22–24; Oct. 21 OSUP, ECF No. 11-4. Thereafter, Espinosa regularly checked in with ICE. Genao Decl. ¶ 25.

After Espinosa missed a March 9, 2026 check-in, ICE directed him to report to 26 Federal Plaza on March 27, 2026 pursuant to a “Form G-56 Call-In Letter.” *Id.* ICE then revoked his OSUP and detained him. *See id.* ¶ 26. On March 31, 2026, Espinosa filed a habeas petition in the Southern District of New York challenging his detention. *See* Pet., *Espinosa v. Bondi*, No. 26 Civ. 2653 (NSR) (S.D.N.Y. Mar. 31, 2026), ECF No. 1. On April 9, ICE released Espinosa from custody pursuant to a new OSUP, and Espinosa voluntarily dismissed his petition. *See* Genao Decl. ¶¶ 27–28; Apr. 9 OSUP, ECF No. 11-5; Stipulation and Order, *Espinosa*, No. 26 Civ. 2653, ECF No. 19.

On June 14, 2026, [1] Espinosa was arraigned in Criminal Court, Queens County, on three charges: (1) aggravated harassment in the second degree, in violation of New York Penal Law ("NYPL") § 240.30(4); (2) criminal mischief in the fourth degree, in violation of NYPL §145.00(1); and (3) harassment in the second degree, in violation of NYPL § 145.05(02). *See* Genao Decl. ¶ 29; RAP Sheet, ECF No. 11-6. Espinosa was released on his own recognizance. Genao Decl. ¶ 29.

On July 8, 2026, Espinosa reported to ICE for a check-in at 26 Federal Plaza. *Id.* ¶ 30. Deportation Officer Kyrios Dookharan[2] contacted his supervisor, informing him of Espinosa's June 13, 2026 arrest and recommending that Espinosa's OSUP be revoked for failure to comply with the condition to not commit a crime. *See* Robinson Decl. ¶ 3, ECF No. 16. Dookharan's supervisor concurred and informed Assistant Field Office Director Darius Robinson of Espinosa's arrest and their recommendation to revoke his OSUP. *See id.* ¶ 4. Based on Espinosa's arrest, Robinson concluded that it was likely that Espinosa had committed a crime, concurred in the recommendation to revoke Espinosa's OSUP, and emailed Dookharan's supervisor a signed notice of revocation of release ("Revocation Notice"). *See id.* ¶¶ 6–7; *see also* Revocation Notice, ECF No. 11-7.[3]

At Espinosa's July 8, 2026 check-in, ICE detained him. Genao Decl. ¶ 30. Dookharan served Espinosa with the Revocation Notice, which stated that Robinson revoked the OSUP because Espinosa "violated a condition of [his] release"; specifically, because "[o]n June 13, 2026, [he was] arrested . . . for Criminal Mischief 3rd." Revocation Notice at 1; Genao Decl. ¶ 31. After providing the

---

[1] Genao states that Espinosa was arrested on June 14, 2026. *See* Genao Decl. ¶ 29. The Notice of Revocation of Release, however, indicates that Espinosa was arrested on June 13, 2026. *See* Revocation Notice at 1, ECF No. 11-7. Espinosa's Record of Arrests and Prosecutions ("RAP sheet") states that the alleged crimes occurred on June 13, 2026, and Espinosa was arraigned on the charges on June 14, 2026. *See* RAP Sheet at 2–3, ECF No. 11-6.

[2] Robinson's declaration spells the officer's name as "Dokharan," and Genao's declaration uses "Doolcharan." *Compare* Robinson Decl. ¶ 3, ECF No. 16, *with* Genao Decl. ¶ 31–32. Based on the printed name on the Notice of Revocation, *see* Notice of Revocation at 2, the Court uses "Dookharan" throughout.

[3] Although courts in this Circuit have previously held that Robinson, an assistant field office director, is not authorized to revoke OSUPs, *see, e.g.*, *Zhang v. Genalo*, 814 F. Supp. 3d 307, 321–22 (E.D.N.Y. 2025), on June 10, 2026, the acting Executive Associate Director of ICE's Enforcement and Removal Operations delegated his authority to revoke an OSUP under 8 C.F.R. § 241.4 to ICE assistant field office directors like Robinson. *See* Delegation Memo, ECF No. 11-10. Because the Court decides the petition on another ground, the Court need not decide whether the delegation order is valid.

Revocation Notice to Espinosa, Dookharan conducted an "informal interview." *See* Genao Decl. ¶ 32; Informal Interview Notes, ECF No. 11-8. Espinosa stated in Spanish that his detention was illegal. *See* Informal Interview Notes.

On September 17, 2026, the three pending charges in Queens County Criminal Court were dismissed. *See* ECF No. 17 at 4.

**DISCUSSION**

I. Legal Framework

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citations omitted). "Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Id.* (citation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (citations omitted).

Espinosa is detained pursuant to 8 U.S.C. § 1231(a). *See* Opp. at 4. Section 1231(a) provides that during a 90-day "removal period," "the Attorney General shall detain" the noncitizen. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). If the person is not removed during that 90-day period, the individual "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). However, certain noncitizens—including inadmissible noncitizens—"may" continue to be detained beyond the 90-day removal period. *Id.* § 1231(a)(6). Because there is no dispute that the 90-day removal period has passed, *see generally* Opp., Espinosa's detention is discretionary. *Liu v. Genalo*, No. 26 Civ. 3720, 2026 WL 1383370, at *2 (S.D.N.Y. May 14, 2026).

The government's detention and redetention authority under § 1231(a)(6) is, however, constrained both by its own procedures and the Constitution. *See Funes v. Francis*, 810 F. Supp. 3d

472, 499 (S.D.N.Y. 2025); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.").

In general, 8 C.F.R. § 241.4 governs ICE's authority to continue detaining a person beyond the removal period, including its authority to revoke the individual's OSUP. *See* §§ 241.4(a), (*l*). Under § 241(*l*), release "may be" revoked if, "in the opinion of the revoking official," the "purposes of release have been served," "[i]t is appropriate to enforce a removal order or to commence removal proceedings," or "[t]he conduct of the [released person], or any other circumstance, indicates that release would no longer be appropriate." § 241(*l*). The person is "entitled to notice of the reasons for the revocation of [his] release and an informal interview promptly after . . . [his] return to custody that afford[s him] an opportunity to respond to the reasons for revocation stated in the notification." *Funes*, 810 F. Supp. 3d at 493 (cleaned up); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 409–15 (S.D.N.Y. 2025); *see* § 241.4(*l*)(1). And § 241.4(*l*)(2) "identifies by title the officials who have the discretion to revoke release and the circumstances when such discretion can be exercised." *Funes*, 810 F. Supp. 3d at 489.[4]

In addition to the government's own regulations, the Fifth Amendment Due Process Clause also limits the government's detention authority under § 1231(a)(6), permitting detention only for "a period reasonably necessary to secure removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. Furthermore, even if release is not required, a petitioner may be entitled to a bond hearing if his detention is unconstitutionally prolonged. *See Lu v. Genalo*, 817 F. Supp. 3d 176, 182 (S.D.N.Y. 2025); *see also Johnson v. Arteaga-Martinez*, 596 U.S.

---

[4] The government does not argue that § 241.4(*l*)(1) and § 241.4(*l*)(2) describe two separate processes for revoking release. *See generally* Opp. Nor would the Court find this argument persuasive. The Court agrees with the several other courts to have addressed this issue that "paragraph (*l*) sets forth a unified set of procedures for the revocation of removal" under § 241.4. *Zhu*, 798 F. Supp. 3d at 410; *see Funes*, 810 F. Supp. 3d at 490–92; *Zhang*, 814 F. Supp. 3d at 323; *Ndoye v. Joyce*, No. 25 Civ. 8856, 2026 WL 306387, at *5 (S.D.N.Y. Feb. 5, 2026).

573, 583 (2022) (leaving for "lower courts" the question of whether and when a bond hearing is constitutionally required for detentions under § 1231(a)(6)).

II. Analysis

Espinosa argues that the revocation of his OSUP was invalid because an arrest is not proof of the commission of a crime, *see* Pet. ¶¶ 3, 24, 29; Reply at 4–5, ECF No. 13. The government contends that the revocation of Espinosa's release comported with agency regulations. *See* Opp. at 13–15. The Court finds that Espinosa's current detention violates his due process rights because the government, despite the dismissal of the criminal charges, continues to detain Espinosa.

In this circuit, courts assessing the adequacy of the process afforded in the civil immigration context apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851. The Court balances (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Each of the three factors weighs in favor of Espinosa's release. First, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (citation omitted).

Second, Espinosa's continued detention on the sole basis of an arrest for now-dismissed charges creates a high "risk of erroneous deprivation" of Espinosa's liberty interest. *Mathews*, 424 U.S. at 335. The only ground for Espinosa's detention is that he violated his OSUP condition not to commit a crime. Revocation Notice at 1. Because the charges have been dismissed, the basis for detention has fallen away. *See, e.g.*, *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 389 (E.D.N.Y. 2026) (finding "unpersuasive" the government's argument that dismissed charges show that the

petitioner "violated *any* condition of [release]," let alone the condition not to commit a crime); *see also* 8 U.S.C. § 1231(a) (authorizing detention only when, pursuant to 8 C.F.R. § 241.4, non-citizen violates an OSUP condition or due to other changed circumstances). The government has provided no additional basis for detention, no evidence that ICE considered releasing Espinosa in light of the case's disposition, and no evidence of steps taken to determine whether detention should continue following the dismissal. Continuing to detain Espinosa after ICE's initial justification expired without a further, individualized determination that Espinosa's OSUP revocation was warranted under 8 C.F.R. § 241.4 violates both ICE's implementing regulations and principles of due process. *Cf. Tumba Huamani v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025) ("Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made."). ICE's failure to "exercise discretion [in accordance with 8 C.F.R. § 241.4 ] prior to the decision to detain a noncitizen who is not subject to mandatory detention" creates a significant risk of "an erroneous deprivation of liberty." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025).

Finally, the third *Mathews* factor weighs in favor of requiring the government to consider the dismissed charges and justify its custody determination. "To require that the Government justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Black*, 103 F.4th at 154 (internal quotation marks and citation omitted); *see also Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (observing that "any amount of actual jail time . . . has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration" (internal quotation marks omitted and alterations adopted)).

In sum, given that the criminal charges against Espinosa were dismissed, the government's justification for detaining him—that Espinosa violated the OSUP condition not to commit a crime—

cannot stand.[5] In weighing the *Mathews* factors, the Court holds that due process requires the government, at minimum, to consider the dismissed charges and justify Espinosa's continued detention. The government has failed to do so here, and, therefore, Espinosa's detention is unconstitutional and his release is required. *See Zhu*, 798 F. Supp. 3d at 415 ("The [g]overnment has significant discretion to enforce the immigration laws and, indeed, to revoke [a petitioner's] Order of Supervision . . . [b]ut it must do so consistent with the requirements of its own regulations and the Due Process Clause.").[6]

## CONCLUSION

For these reasons, the Petition is granted. By **October 15, 2026 at 5:00 p.m.**, the government is directed to release Espinosa, subject to the conditions of his preexisting OSUP, and to return any property taken from the petitioner at the time of his re-detention. By **October 15, 2026 at 11:59 p.m.**, the government shall file a letter certifying compliance with this order.

The Court further orders that the government may not revoke Espinosa's OSUP and redetain him without prior authorization of this Court and without adequate notice of valid reasons for the revocation of release and a meaningful opportunity to be heard as to those reasons.

SO ORDERED.

Dated: October 14, 2026
New York, New York

ANALISA TORRES
United States District Judge

[5] In so holding, the Court does not address the question of whether the government's reliance on Espinosa's arrest alone would have been an adequate basis to revoke his OSUP.

[6] Espinosa additionally argues that his detention is invalid because there is no reasonable likelihood of removal in the foreseeable future given that he is entitled to withholding of removal to Venezuela, his home country. *See* Pet. ¶¶ 32–36; Reply at 6–7. The government responds that there is a reasonable likelihood of removal to Mexico. *See* Opp. at 15–18. The Court need not decide these issues regarding the likelihood of removal given its determination that ICE now lacks a basis for the revocation of Espinosa's OSUP, rendering his continued detention unlawful.